UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OUDONE LALUANGPHET,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | No. 2:14-cv-499-EFB<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The parties have filed cross-motions for summary judgment. For the reasons discussed below, plaintiff's motion is denied and defendant's motion is granted.

I. BACKGROUND

Plaintiff filed an application for SSI on February 2, 2011, alleging that she had been disabled since November 12, 2009. Administrative Record ("AR") 139-144. Her application was denied initially and upon reconsideration. *Id.* at 95-100, 104-108. On May 10, 2012, a hearing was held before administrative law judge ("ALJ") Sara A. Gillis. *Id.* at 44-72. Plaintiff was represented by counsel and plaintiff and a vocational expert ("VE") testified. *Id.*

/////

On May 17, 2012, the ALJ issued a decision finding that plaintiff was not disabled under section 1614(a)(3)(A) of the Act.[1] *Id.* at 23-31. The ALJ made the following specific findings:

1. The claimant has not engaged in substantial gainful activity since February 2, 2011, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: major depressive disorder, posttraumatic stress disorder (PTSD), and borderline personality disorder (20 CFR 416.920(c)).

\* \* \*

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.* Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq.* Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

2

\* \* \*

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can understand, remember and carry out simple one and two-step job tasks, can maintain concentration, persistence and pace for simple job tasks, can interact with the supervisors and coworkers and occasionally interact with the public.

\* \* \*

5. The claimant has no past relevant work (20 CFR 416.965).

\* \* \*

6. The claimant was born on February 3, 1990 and was 20 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

\* \* \*

10. The claimant has not been under a disability, as defined in the Social Security Act, since February 2, 2011, the date the application was filed (20 CFR 416.920(g)).

*Id.* at 25-31.

Plaintiff's request for Appeals Council review was denied on December 18, 2013, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-6.

II.   LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel,* 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III.     ANALYSIS

Plaintiff argues that the ALJ erred in (1) failing to properly evaluate the medical opinion evidence, and (2) rejecting her testimony without legally sufficient reasons. ECF No. 15 at 14-22.

A. The ALJ Properly Evaluated the Medical Opinion Evidence

Plaintiff first argues that the ALJ failed to properly weigh the medical opinion evidence of record. *Id*. at 14-18. The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester*, 81 F.3d at 834. Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id*.; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining medical professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. *Id*. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g.,

supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

On March 5, 2010, treating physician Dr. Hazem Hashem, M.D. diagnosed plaintiff with major depressive disorder, recurrent, and assessed plaintiff a GAF score of 55.[2] AR at 238. Treatment notes from April 29, 2010 state that "as far as [plaintiff's] medication and depression, she seems to be doing well. Denied having any major symptoms or any side-effects of medication." *Id.* at 236. In November 2010, Dr. Hashem found that plaintiff had Major Depressive Disorder, PTSD and possible Borderline Intellectual Functioning with some borderline personality traits. *Id.* at 233. In February 2011, he assessed plaintiff with a GAF score of 50. *Id.* at 229.

Plaintiff was also seen by Dr. Lillian M. Dalida, M.D., a treating physician. Dr. Dalida diagnosed plaintiff with a mood disorder, personality disorder with narcissistic and borderline features, and assessed a GAF score of 50. *Id.* at 277. Dr. Dalida noted on November 30, 2011 that plaintiff usually takes her medication, does not like Trazadone, and that "[p]laintiff is maintaining well on current medication regiment. She appears happy today." *Id.* at 315.

Plaintiff also underwent a complete psychiatric evaluation, which was performed by Dr. Bradley Daigle, M.D., an examining physician. *Id.* at 259-264. Dr. Daigle diagnosed plaintiff with dysthymia, chronic, treated; history of posttraumatic stress disorder, partially treated; borderline personality traits; and a GAF of 60. *Id.* at 263. Dr. Daigle opined that plaintiff was not significantly limited in understanding, remembering and carrying out simple one or two step instructions, and following detailed and complex instructions; slightly limited in maintaining

---

[2] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas. v. Lambert*, 159 F.3d 1161, 1164 n. 2 (9th Cir. 1998).

concentration and attention, persistence and pace; slightly to moderately limited in relating and interacting with supervisors, co-workers and the public; slightly to moderately limited in associating with day-to-day work activity, including attendance and safety; and moderately limited in ability to adapt to the stresses common to a normal work environment. *Id.* at 264. Dr. Daigle concluded that "[plaintiff] should be able to resume her education and/or employment going forward from this point." *Id.* at 263.

The record also contains a Mental Residual Functional Capacity Assessment completed by Dr. V. Meenakshi, M.D., a non-examining physician. *Id.* at 80-81. Dr. Meenakshi found that plaintiff was not significantly limited in carrying out very short and simple instructions; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerance; sustaining an ordinary routine without special supervision; working in coordination with or in proximity to others without being distracted by them; and in making simple work-related decisions. *Id*. Dr. Meenakshi further opined that plaintiff was moderately limited in carrying out detailed instructions, maintaining attention and concentration for extended periods; completing a normal workday and workweek without interruptions from psychologically based symptoms; and performing at a consistent pace without an unreasonable number and length of rest periods. *Id*. Dr. R. Tashjian, M.D., also a non-examining physician, completed a Mental Residual Functional Capacity Assessment on September 1, 2011 and shared the same opinion as Dr. Meenakshi. *Id.* at 90-91.

In assessing plaintiff's RFC, the ALJ gave "considerable weight" to the opinion of Dr. Daigle, while finding Drs. Meenakshi and Tashjian's opinions "persuasive." *Id*. at 28. Plaintiff contends, however, that the ALJ failed to properly consider medical evidence from her treating physicians and correctly incorporate the opinions by Drs. Daigle, Meenakshi, and Tashjian into her RFC. As explained below, the ALJ did not err in evaluating the medical opinion evidence.

Plaintiff first contends that the ALJ failed to consider the GAF scores assessed by her treating physicians, Drs. Hashem and Dalida. ECF No. 15 at 15-16. The ALJ, however, was under no obligation to specifically address the GAF scores assessed by these physicians. "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning

6

1    used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n. 2

2    (9th Cir. 1998). "The scale does not evaluate impairments caused by psychological or

3    environmental factors." *Morgan*, 169 F.3d at 598 n. 1. Because the scores are intended for use in

4    planning treatment, they are not dispositive in social security cases, *Vance v. Astrue*, No. CV 08-

5    04418-SS, 2008 WL 2955140, at *5 (C.D. Cal. July 30, 2008), and "an ALJ is not required to

6    give controlling weight to a treating physician's GAF score," *Chavez v. Astrue,* 699 F. Supp. 2d

7    1125, 1135 (C.D. Cal. 2009). Thus, "[a]n ALJ has no obligation to credit or even consider GAF

8    scores in the disability determination." *Aldrich v. Colvin*, No. 2:13-CV-00401-JTR,

9    2014 WL 6653999, at *29, (E.D. Wash. Nov. 24, 2014) (citing 65 Fed. Reg. 50746, 50764–65

10   (Aug. 21, 2000) (GAF scale does not have a direct correlation to the severity requirements in SSA

11   mental disorders listings)). Accordingly, the ALJ did not err in failing to address the GAF scores

12   assessed by plaintiff's treating physicians.

13   Plaintiff further argues that the ALJ erred in failing to consider and discuss medical

14   records from Dr. Dalida. ECF No. 15 at 15-16. Specifically, plaintiff argues that the ALJ's

15   decision did not reflect "Dr. Dalida's February 2012 observation that [plaintiff] continued with

16   intermittent suicidal thought as well as intermittent auditory hallucinations and paranoia." *Id*. at

17   15. While the ALJ did not specifically note that plaintiff reported intermittent suicidal thoughts,

18   hallucinations, and paranoia during her February 2012 evaluation, the ALJ addressed the

19   treatment notes from this time period, observing that "[i]n February 2012, mental health records

20   indicate that the claimant was doing 'well' on her current [medication] regimen." AR 29. Thus,

21   the ALJ's decision specifically discussed the February 2012 medical notes from Dr. Dalida.

22   Moreover, the ALJ was under no obligation to provide a detailed discussion of the

23   February 2012 treatment notes. Indeed, an ALJ need not discuss every piece of evidence in the

24   record, so long as his decision is supported by substantial evidence. *See Howard v. Barnhart*, 341

25   F.3d 1006, 2012 (9th Cir. 2003). As noted above, the ALJ relied on Dr. Daigle's opinion in

26   determining plaintiff's RFC, and this examining physician's opinion constitutes substantial

27   evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (an examining physician's

28   opinion on its own constitutes substantial evidence where it rests on the physician's independent

examination of the claimant). Plaintiff's February 2012 reports of intermittent suicidal thoughts, hallucinations, and paranoia do not undermine Dr. Daigle's opinion, especially in light of Dr. Dalida's findings that plaintiff was doing well on her medication despite these reported symptoms. Accordingly, the ALJ did not err by failing to discuss in detail Dr. Dalida's February 2012 treatment notes.

Plaintiff contends, however, that the ALJ failed to fully account for the opinion of examining physician Dr. Daigle, which he accorded "considerable weight." ECF No. 15 at 14-15. Plaintiff argues that the ALJ's RFC determination failed to include Dr. Daigle's opinion that plaintiff was slightly limited in maintaining concentration and attention and persistence and pace; slightly to moderately limited in relating and interacting with supervisors, coworkers, and the public, and in associating with day-to-day work activity; and moderately limited in adapting to the stress common to a normal work environment. *Id.*

Contrary to plaintiff's contention, the ALJ's RFC determination properly incorporated Daigle's opinion. "An ALJ may synthesize and translate assessed limitations into an RFC assessment without necessarily repeating each functional limitation verbatim in the RFC assessment." *Martin v. Astrue*, No. 2:12–cv–0033–KJN, 2013 WL 552932, at *8 (E.D. Cal. Feb. 12, 2013) (citing *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1173–74 (9th Cir. 2008)). Moreover, an RFC adequately captures a claimant's limitations where it is consistent with the limitations in the work-related abilities identified in the medical evidence. *Rogers v. Comm'r of Soc. Sec. Admin.*, 490 F. App'x 15, 17 (9th Cir. 2012). Dr. Daigle generally assessed only slight to moderate impairments in plaintiff's ability to function mentally. AR 263. Although he did find that plaintiff was moderately impaired in adapting to stresses common to the work environment, he opined that she retained the ability to perform simple one and two-step job tasks and ultimately concluded that plaintiff "should be able to resume her education and/or employment." *Id.* at 263-264. The limitations assessed by Dr. Daigle are consistent with the ALJ's finding that plaintiff maintained the ability to perform simple one and two-step tasks with only occasional interaction with the public. *See Keller v. Colvin*, 2014 WL 130493, at * 3

/////

(finding that an RFC limiting plaintiff to simple repetitive tasks with limited public contact captured opinion limiting plaintiff to, among other things, simple tasks in low-stress setting).

Plaintiff also contends that the ALJ failed to fully account for Drs. Meenakshi and Tashjian's opinions, which he purported to give considerable weight. ECF No. 15 at 16-17. Specifically, plaintiff contends the ALJ's RFC determination failed to account for these physicians' opinions that plaintiff was moderately limited in maintaining attention and concentration for extended periods; completing a normal workday and workweek without interruptions from psychologically based symptoms; and performing at a consistent pace without an unreasonable number and length of rest periods. *Id.*

In according Drs. Meenakshi and Tashjian's opinions "considerable weight" and finding them persuasive, the ALJ specifically noted that these nonexamining physicians opined that plaintiff could perform simple tasks and adapt appropriately to work situations. AR 28. The ALJ's RFC determination did not include the moderate limitations identified by plaintiff. The ALJ, however, was under no obligation to include such limitations. A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 416.945(a)(1). A claimant's RFC must be "based on all the relevant evidence in [the claimant's] case record." *Id*. But "[i]t is not necessary [for the ALJ] to agree with everything an expert witness says in order to hold that his testimony contains substantial evidence." *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988).

Drs. Meenakshi and Tashjian assessed more severe limitations than Dr. Daigle. In assessing plaintiff's RFC, it is clear that the ALJ adopted the less severe limitations assessed by Dr. Daigle over the opinions provided by Drs. Meenakshi and Tashjian. Given that Dr. Daigle was an examining physician, and Drs. Meenakshi and Tashjian were nonexamining physicians, the ALJ was permitted to resolve the conflict between the various opinions and afford more weight to Dr. Daigle's examining opinion. *Lester*, 81 F.3d at 831 ("The opinion of an examining physician is . . . entitled to greater weight than the opinion of a nonexamining physician.").

Accordingly, the ALJ properly weighed the medical evidence of record and plaintiff's arguments are without merit.

B. <u>The ALJ Gave Legally Sufficient Reasons for Discrediting Plaintiff's Testimony</u>

Plaintiff next argues that the ALJ erred in rejecting her testimony regarding the nature of her symptoms without providing clear and convincing reasons. ECF No. 15 at 18-22.

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of impairment, the ALJ may then consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. *See id.* at 345-347. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. *Smolen*, 80 F.3d at 1284. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. *See Flaten v. Secretary of HHS*, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, *see Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis, *Marcia v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan*, 169 F.3d at 599.

Plaintiff alleged on her function report, on February 22, 2011, that she spends her day lying in bed; she does not take care of anyone else; her illness affects her ability to dress, bathe and care for her hair; she needs reminders to take care of herself; she cannot prepare her own meals because she "want[s] to die sometimes;" and she has no hobbies or interests. *Id.* at 155-159. Plaintiff also stated she spends time with her friends once a week; goes to the movies or

/////

out to eat; can only pay attention for 35 minutes; she gets along "good" with authority figures; and is "not so good" at handling stress and changes in routine. *Id.* at 156-161.

At her hearing she testified that the medication Remeron did not work and had negative side effects of weight gain; that Trazadone was ineffective and gave her headaches; and that Lexapro made her sick to her stomach. *Id.* at 52-55. She also testified that she had difficulty sleeping; and that on bad days somebody has to help her bathe and dress herself. *Id.* at 57-59. She also stated she has no history of using street drugs or alcohol, except marijuana when she was a teenager. *Id.* at 60.

In finding the plaintiff's testimony not fully credible the ALJ noted that the plaintiff: 1) made inconsistent statements; 2) was not been entirely compliant in taking her medication; and 3) had no work history, which called into question the cause of her unemployment. *Id.* at 28-29.

First, the ALJ observed several inconsistencies in plaintiff's statements. The ALJ noted that plaintiff testified at the hearing that she did not babysit, *id.* at 62, but previously told Dr. Daigle that she enjoyed babysitting her two-year old niece.[3] *Id.* at 261. The ALJ also noted that plaintiff stated in her functional report that she was unable to prepare meals or perform household chores without support and encouragement. *Id.* at 28; *see id.* at 157. However, as noted by the ALJ, during a consultative psychiatric examination, plaintiff stated that she was independent in such activities. *Id.* at 261. Plaintiff also indicated to physicians that she used to smoke

---

[3] The transcript from the hearing reflects the following colloquy between the ALJ and plaintiff regarding babysitting:

Q: And do you ever babysit any family members?
A: No
Q: Have you ever babysat for other people?
A: No.
Q: No babysitting?
A: No
Q: No niece or nephew?
A: Yes.

AR at 68. Although she ultimately conceded that she babysat a niece or nephew, she was evasive in answering the question, which understandably influenced the ALJ's assessment of her credibility. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (holding that the ALJ is entitled to make logical inferences from the evidence).

11

marijuana, had tried alcohol once and had tried huffing cleaner fluid. *Id.* at 250. However, at the hearing she testified that she had not used any other street drugs besides marijuana and denied ever drinking alcohol. *Id.* at 60. The ALJ was permitted to rely on plaintiff's numerous inconsistent statements in finding her not fully credible. *Smolen*, 80 F.3d at 1283 (finding that an ALJ may rely on inconsistent statements in assessing a claimant's credibility).

The ALJ also observed that plaintiff's symptoms were effectively controlled with medication, but that plaintiff "had not been entirely compliant in taking her taking prescribed medication, which suggests that the symptoms may not have been as limiting as [plaintiff] has alleged . . . ." AR 29. An ALJ is permitted to consider an unexplained or inadequate explanation for failing to follow a prescribed course of treatment in assessing a plaintiff's credibility. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *see Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (holding that where a claimant complains of disabling pain but fails to seek treatment, or fails to follow prescribed treatment, an ALJ may use such failure as a basis for finding the complaint unjust or exaggerated). Furthermore, "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of eligibility for SSI benefits." *Warre v. Comm'r Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

The record contains significant evidence supporting the ALJ's finding that plaintiff was not fully compliant in taking her medication as prescribed, but did well when she was compliant. *See, e.g.,* AR 227 (December 2011 note indicating that plaintiff denied taking psychiatric medication), 233 (November 2010 treatment note indicating plaintiff reported taking medication intermittently), 234 (July 2010 treatment note indicating plaintiff "will skip taking the medication for awhile and then she would throw it away and restart again"), 235 (April 2010 note indicating plaintiff does well on her medication), 340 (November 2010 assessment reflecting plaintiff experienced relapse of depressive thoughts and was not compliant with medication), 249 (January 2011 treatment indicating that plaintiff stopped taking Remeron 2 months prior and that she "believes this is one reason her suicidal thoughts have returned"), 277 (June 2011 treatment notes reflecting that plaintiff had not taken her medication for the past three months), 317 (September 2011 note reflecting that plaintiff stopped taking Lexapro even though she admitted to feeling

better when takes Lexapro and Trazodone), 315 (November 2011 treatment note stating, "Patient is maintaining well on current medication regimen. She appears happy today."). Accordingly, plaintiff's failure to take her medication as prescribed, especially in light of the evidence demonstrating that plaintiff's impairments were effectively controlled by medication, is a clear and convincing reason for rejecting her subject complaints.

Lastly, the ALJ also noted that the claimant has never worked, raising questions about whether her unemployment is truly the result of medical problems. AR at 29. The ALJ is entitled to consider plaintiff's work history in making a credibility determination. *See Thomas*, 278 F.3d at 959 (ALJ properly found poor work history and lack of propensity to work in lifetime negatively affected claimant's credibility regarding her inability to work). Not only does plaintiff have no history of working, but she reported that she stopped looking for employment because she did not have any luck finding a job. AR 261. Thus, the ALJ properly relied on plaintiff's poor work history in rejecting her complaints of disabling mental impairments.

Accordingly, the ALJ gave several clear and convincing reasons for finding that plaintiff was not credible.

IV. CONCLUSION

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

2. The Commissioner's cross-motion for summary judgment is granted; and

3. The Clerk is directed to enter judgment in the Commissioner's favor.

DATED: September 24, 2015.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE